UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA FINE WINE & SPIRITS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20-cv-00741-TWP-MJD |
| DAVID COOK, Chairman, Indiana Alcohol and Tobacco Commission, JOHN KRAUSS, Vice Chairman, Indiana Alcohol and Tobacco Commission, DALE GRUBB, Commissioner, Indiana Alcohol and Tobacco Commission, and MARJORIE MAGINN, Commissioner, Indiana Alcohol and Tobacco Commission, | ) |
| Defendants. | ) |

**ENTRY ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on a Motion for Preliminary Injunction filed pursuant to Federal Rule of Civil Procedure 65 by Plaintiff Indiana Fine Wine & Spirits, LLC, doing business as Total Wine & More ("IFWS") ([Filing No. 13](#)).  IFWS initiated this action against Defendants David Cook ("Cook"), John Krauss ("Krauss"), Dale Grubb ("Grubb), and Marjorie Maginn ("Maginn") in their official capacities as Chairman, Vice-Chairman and Commissioners of the Indiana Alcohol and Tobacco Commission (collectively, "ATC").  IFWS seeks injunctive and declaratory relief regarding the constitutionality of Indiana Code § 7.1-3-21-5.4(b), which governs the issuance of alcohol dealer's permits for limited liability companies in Indiana.  The parties submitted briefing and evidence in the form of declarations, affidavits and exhibits.  The parties' briefing is thorough and oral argument is unnecessary.  For the reasons that follow, the Court determines that IFWS is entitled to a preliminary injunction.  IFWS has a strong likelihood of success on its challenge to the statute, has no adequate remedy at law, and faces irreparable harm

if ATC is not enjoined. In addition, the balance of harms and the public interests favors IFWS. Accordingly, the motion for injunctive relief is **granted**.

## I. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation and quotation marks omitted). Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation and quotation marks omitted).

> To obtain a preliminary injunction, a plaintiff must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm. If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction. However, if the plaintiff passes that threshold, the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest.

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citations and quotation marks omitted). "The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (citation and internal quotation marks omitted). "Stated another way, the district court 'sit[s] as would a

chancellor in equity' and weighs all the factors, 'seeking at all times to minimize the costs of being mistaken.'" *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

## II. FINDINGS OF FACT

Plaintiff IFWS is an Indiana limited liability company with an Indiana resident agent and a principal place of business in Bethesda, Maryland. IFWS is owned by David Trone and Robert Trone--who are Maryland residents--and five trusts held for the benefit of their children. They are United States citizens, but none are residents of Indiana. The individual owners of IFWS have experience in operating retail alcoholic beverage stores through common ownership with other entities. Collectively, they own and operate more than two hundred alcoholic beverage stores in twenty-four states other than Indiana, all trading under the name Total Wine & More ("Total Wine"). Stores operating under the Total Wine name are committed to offering the nation's best selection of alcoholic beverages and having the lowest prices on wine, spirits, and beer. IFWS wants to bring the Total Wine concept to Indiana consumers (Filing No. 1 at 1, 3–4).

Under Indiana law, a permit from the ATC is required to sell alcoholic beverages in the state of Indiana. IFWS has entered into a purchase agreement (the "Purchase Agreement") with MH Nora HG, LLC, for the purchase and transfer of an Indiana Beer, Wine, and Liquor Package Store Dealer Permit (the "Package Store Permit"). IFWS has paid into escrow for the benefit of the seller the full purchase price of the Package Store Permit (Filing No. 1 at 2; Filing No. 14-1 at 4).

The Package Store Permit authorizes operation of a 26,000 square foot retail package store in the Nora Corners Shopping Center ("Nora Corners") at 1460 East 86th Street in Indianapolis, Indiana pursuant to a ten-year lease effective January 6, 2020 (the "Lease"). The Purchase Agreement and the Lease between IFWS and MH Nora HG are both subject to IFWS obtaining

the approval of the Alcoholic Beverage Board of Marion County and the ATC for transfer of the Package Store Permit to IFWS. The Purchase Agreement automatically terminates if IFWS cannot obtain approval for transfer of the Package Store Permit within 120 days after January 7, 2020, and the Lease is terminable by either party if the transfer is not approved by April 5, 2020 (Filing No. 1 at 2–3; Filing No. 14-1 at 4–5).

Anticipating the transfer of the Package Store Permit to IFWS, and to ensure that IFWS is able to open its planned package store in time for the upcoming holiday season (November 2020 through early January 2021), IFWS has incurred approximately $40,000.00 in costs to design the site for a retail package store. IFWS also has incurred substantial, unrecoverable administrative and legal costs in excess of $60,000.00 in contemplation of the transfer of the Package Store Permit (Filing No. 1 at 3; Filing No. 14-1 at 5).

IFWS presents evidence of the time-intensive and costly process that Total Wine incurred to find a suitable location to open a business, especially in a state that is new to Total Wine. Employees of entities affiliated with IFWS have devoted hundreds of hours over the last twelve months studying the laws applicable to retail package store businesses in Indiana, evaluating the needs and desires of the residents in Indiana, identifying suitable real estate for its first flagship store, negotiating a lease, and acquiring a license that will allow IFWS to operate its proposed package store business. IFWS's efforts led them to the Nora Corners shopping center in Indianapolis. The Nora Corners location is optimal for a Total Wine store because this site has outstanding road visibility, ample parking, easy ingress and egress and an adequate co-tenant mix of businesses that are likely to make contributions to the overall health and success of the center. (Filing No. 14-1 at 4.) The Nora Corners site selection is critical to IFWS's business model and

there currently are no other comparable sites in Indianapolis (Filing No. 1 at 4; Filing No. 14-1 at 2–6).

IFWS applied to the ATC to transfer the Package Store Permit to IFWS. The application included all the information required by Indiana law for approval of the transfer. The ATC assigned the transfer application to the local board to conduct a public hearing and recommend approval or denial. Importantly, the local board's duties are advisory, with the ultimate authority to approve the transfer remaining with the ATC (Filing No. 1 at 3).

The ATC considered IFWS's application during an open hearing on March 3, 2020. All four individual Defendants voted to deny IFWS's transfer application on the basis that IFWS's owners do not satisfy the "in-state residency" requirements of Indiana Code § 7.1-3-21-5.4(b). Defendant Krauss, Vice Chairman of the ATC, commented at the hearing that the ATC was in a legal quagmire until a court or the Indiana General Assembly addressed the constitutionality of Section 5.4(b). A letter from Defendant Cook, Chairman of the ATC, was sent to IFWS the day after the hearing. *Id.* at 7. The letter explained that the sole basis for denying the application was that IFWS "does not meet the eligibility requirements as set out in IC 7.1-3-21-5.4(b)(1) and is, therefore, deemed ineligible to hold a dealer's permit for a package liquor store in Indiana." (Filing No. 1-2 at 1–2.)

Three days after the ATC's decision to deny the transfer application, IFWS filed the instant Complaint for injunctive and declaratory relief, challenging the constitutionality of Indiana Code § 7.1-3-21-5.4(b) and alleging that Section 5.4(b) violates the dormant Commerce Clause of the United States Constitution. IFWS asserts that this Court has jurisdiction and authority to issue the requested declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202.

Thus, ATC's actions in reliance on Section 5.4(b) have caused and are causing it irreparable harm, and IFWS is entitled to preliminary injunctive relief to remedy that harm ([Filing No. 1](#)).

The challenged statute declares,

> The commission shall not issue an alcoholic beverage dealer's permit of any type for the premises of a package liquor store to a limited liability company unless:
>
> > (1) at least sixty percent (60%) of the outstanding membership interest in the limited liability company is owned by persons who have been continuous and bona fide residents of Indiana for five (5) years; and
> >
> > (2) the membership interest described in subdivision (1) constitutes a controlling interest in the limited liability company.

Ind. Code § 7.1-3-21-5.4(b).

### III.     DISCUSSION

As previously stated, to obtain a preliminary injunction, IFWS must establish the following factors as to the statute it seeks to enjoin: (1) that it is likely to succeed on the merits, (2) that it has no adequate remedy at law, (3) that it is likely to suffer irreparable harm in the absence of preliminary relief, (4) that the balance of equities tips in its favor, and (5) issuing the injunction is in the public interest. *Geft*, 922 F.3d at 364. The first two factors are threshold determinations; "[i]f the moving party meets these threshold requirements, the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). The Court will address the threshold factors before addressing the remaining factors.

**A.     Likelihood of Success on the Merits and Adequate Remedy at Law**

The Commerce Clause gives Congress authority "to regulate Commerce … among the several States." U.S. Const. art. I, § 8, cl. 3. By long-established precedent of the United States

Supreme Court, the dormant (or "negative") Commerce Clause limits the power of states to discriminate against interstate commerce. *E.g.*, *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992). Under a long line of dormant Commerce Clause precedent, state laws invalidly discriminate against interstate commerce "if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm, v. Heald*, 544 U.S. 460, 472 (2005); *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992).

IFWS argues it is entitled to preliminary injunctive relief because it is highly likely that it will prevail on its claim that the in-state residency requirements of Section 5.4(b) are unconstitutional because they facially violate the dormant Commerce Clause of the United States Constitution. *See* Art. I, § 8, Cl. 3; *see also Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (U.S. 2019) (internal citations and quotation marks omitted) ("Although the Clause is framed as a positive grant of power to Congress, we have long held that this Clause also prohibits state laws that unduly restrict interstate commerce. This 'negative' aspect of the Commerce Clause prevents the States from adopting protectionist measures and thus preserves a national market for goods and services.").

In this case, Indiana Code § 7.1-3-21-5.4(b) prohibits the ATC from issuing a dealer's permit for a package liquor store to a limited liability company unless "at least sixty percent (60%) of the outstanding membership interest in the limited liability company is owned by persons who have been continuous and bona fide residents of Indiana for five (5) years," and "the membership interest described in subdivision (1) constitutes a controlling interest in the limited liability company." Ind. Code § 7.1-3-21-5.4(b). IFWS argues that this law, on its face, discriminates in favor of Indiana residents and against out-of-state residents. It asserts that, outside the alcoholic beverage industry, a statute like this would be "virtually *per se*" violative of the dormant

7

Commerce Clause. *See Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected").

In the alcoholic beverage context, courts must also consider whether the powers reserved to the states under the Twenty-First Amendment modify the prohibitions on in-state protectionism mandated by the dormant Commerce Clause. *See* U.S. Const. amend. XXI, § 2. ("The transportation or importation into any State, Territory, or Possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."). The recent Supreme Court opinions in *Granholm* and *Tennessee Wine* provide guidance concerning the relationship between the Twenty-First Amendment and the dormant Commerce Clause. IFWS argues that *Granholm* and *Tennessee Wine* make clear that the Twenty-First Amendment does not affect the basic non-discrimination principle of the dormant Commerce Clause and that residency requirements for alcoholic beverage licenses are subject to that principle.

IFWS asserts,

> In *Granholm*, the Court struck down state laws that allowed in-state wineries to sell directly to in-state consumers but required out-of-state wineries to sell to in-state wholesalers before their products could be distributed to consumers. The Court held that these laws discriminated on their face against out-of-state interests and therefore violated the dormant Commerce Clause, and that they were not saved by the Twenty-First Amendment because the states could not sustain a "legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." 544 U.S. at 488-89 (citations and internal quotations omitted). The primary justifications offered – keeping minors from obtaining alcohol and facilitating tax collection – were easily addressed by other nondiscriminatory measures. *Id.* at 490-91. By itself, the *Granholm* decision should be sufficient to invalidate Indiana Code § 5.4(b).

([Filing No. 14 at 8](#).)

IFWS directs the Court's attention to an 2016 advisory letter from then-Indiana Attorney General Greg Zoeller to the ATC, wherein Attorney General Zoeller advised that the statute

requiring in-state residency for corporations to receive an alcoholic beverages permit is, on its face, violative of the dormant Commerce Clause (Filing No. 1-1). Relying on the *Granholm* decision, Attorney General Zoeller opined that the statute did not serve a legitimate local purpose that could not be adequately served by reasonable non-discriminatory alternatives. Attorney General Zoeller noted in his letter to the ATC that there was "no apparent relationship" between the in-state residency requirement and "collecting revenue, inspecting inventory, monitoring sales practices, or preventing underage drinking." *Id.* at 5.

Concerning *Tennessee Wine,* IFWS asserts that this decision reaffirmed that in-state residency requirements for retail liquor licenses are subject to the non-discrimination principle of the dormant Commerce Clause. In *Tennessee Wine*, the United States Supreme Court explained that, when a state liquor law is facially discriminatory, courts consider "whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." 139 S. Ct. at 2474. States cannot meet this test with "mere speculation" or "unsupported assertions," and "[w]here the predominant effect of a law is protectionism, not the protection of public health or safety, it is not shielded by §2" of the Twenty-First Amendment. *Id.*

In *Tennessee Wine,* the Supreme Court struck down Tennessee's two-year residency requirement while rejecting the argument that the in-state residency requirement "ensures that retailers are 'amenable to the direct process of state courts.'" *Id.* at 2475. The court explained that this objective could "easily be achieved by ready alternatives, such as requiring a nonresident to designate an agent to receive process or to consent to suit in the Tennessee courts." *Id.* Here, IFWS explains, that it has already designated an in-state resident to receive process.

The Supreme Court also rejected the other proffered reasons for the two-year residency requirement: "a better opportunity to determine an applicant's fitness to sell alcohol," guarding

9

against "undesirable nonresidents" from moving into Tennessee to operate a liquor store, ensuring that "only law-abiding and responsible applicants receive licenses," maintaining oversight of liquor store operators, and promoting "responsible alcohol consumption" because in-state retailers will be "familiar with the communities served by their stores." *Id.* Thus, IFWS argues, many authorities "have all implied or expressly held that Indiana could not constitutionally mandate that 60 percent of the business owners of an Indiana liquor permit be Indiana residents for five years." ([Filing No. 14 at 9](#).) "Because Section 5.4(b) openly and intentionally discriminates against out-of-state interests, it plainly violates the dormant Commerce Clause." *Id*. at 10.

ATC resists this conclusion on multiple bases. First, the ATC argues that IFWS "filed its lawsuit prematurely in federal court while the administrative review of its application should have been proceeding," and "the Supreme Court has recognized that, even with questions of the constitutionality of a challenged statute, it is often desirable for state courts to have the first opportunity to consider the statute." ([Filing No. 39 at 1](#).)

The ATC argues IFWS has an adequate remedy at law because the denial of IFWS's transfer application was not the end of the administrative and state court review process. They explain that IFWS should have utilized that administrative and state court judicial review process before filing this suit. IFWS could have objected to the ATC's denial and requested an appeal hearing before the ATC. If the ATC again denied the application, IFWS could have then sought judicial review in the state courts. Moreover, "[b]ecause judicial review is available for permit denials, and because state courts may declare state statutes unconstitutional and unenforceable, IFWS has an adequate remedy at law that should preclude this Court from issuing a preliminary injunction." *Id.* at 5. The ATC asserts that federal and state courts have recognized that judicial review itself is an adequate remedy at law, citing *Scales v. Hosp. House of Bedford*, 593 N.E.2d

1283, 1286 (Ind. Ct. App. 1992) and *Wisconsin Cent. Ltd. v. Pub. Serv. Comm'n of Wisconsin*, 95 F.3d 1359, 1370 (7th Cir. 1996).  The ATC further argues,

> IFWS could have pursued the administrative appeals process available following the permit denial and sought judicial review if the Commission affirmed the denial on appeal. Had IFWS sought judicial review, a state court could have reviewed the challenged statute, and, in effect, have provided the same relief to IFWS as it seeks in moving for a preliminary injunction in this Court.

([Filing No. 39 at 5](#)–6.)

Pointing to the Supreme Court's decision in *D.C. Court of Appeals v. Feldman*, the ATC emphasizes the "desirability of giving the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments" as a "state court may give the statute a saving construction in response to those arguments." 460 U.S. 462, 482 n.16 (1983). The ATC argues that, while *Tennessee Wine* foreclosed durational residency requirements that require all officers, directors, and capital stock owners to meet the durational residency requirement, Indiana Code § 7.1-3-21-5.4(b) is a percentage-ownership requirement, and a state court might have provided a "saving construction" in response to IFWS's constitutional arguments.

ATC briefly argues that IFWS is not likely to succeed on the merits because its claim is not yet ripe as the state administrative review process was not pursued.  It argues that the statute serves important, non-protectionist purposes because "residency requirements increase the likelihood that the license holders would be able to effectively curtail alcohol abuse and prevent underage drinking, and that tax revenue collection may be easier." ([Filing No. 39 at 9](#)). In sum, ATC contends residency requirements provide better oversight of the State over liquor store operators. *Id*. That said, ATC acknowledges that the Supreme Court held that Tennessee's residency requirements were not needed to enable oversight, and thus these rationales provided

11

were insufficient to overcome challenge under the dormant Commerce Clause. *Id*. *Tennessee Wine* at 2475.

As noted by IFWS, the difficulty with ATC's position is that if the true purpose of the statute is to protect the public health, then Indiana has other non-discriminatory alternatives to serve that purpose such as limiting the number of retail licenses and limiting the amount of alcohol that can be sold to an individual. Indiana also can mandate training for managers and employees or monitor the practices of retailers and take action against those that violate the law. Moreover, if protecting the public health is the real purpose of the statute, then that purpose is undermined by the long list of exceptions to the in-state residency requirement for permittees. Indiana does not require residency for those operating drug stores, dining cars, boats, grocery stores, hotels, airplanes, gaming sites, horse tracks, satellite facilities, and certain large restaurants. *See* Ind. Code. § 7.1-3-21-6(a)(1)–(10). Indeed, the drug store and grocery store exceptions allow mammoth out-of-state corporations like Walmart to sell alcoholic beverages in Indiana. IFWS asserts that it is clear the statute's purpose is to protect the economic interests of in-state businesses.

Replying to the ATC's assertion that the claim here is not ripe, IFWS explains that the claim clearly is ripe; it sought a permit pursuant to Indiana statute, it was denied a permit based on the plain language of the statute, and now it seeks injunctive and declaratory relief that the statute is unconstitutional on its face. IFWS argues that the ATC has effectively conceded that IFWS is likely to succeed on the merits, and the ATC's argument amounts to a request for abstention in favor of state procedural remedies, but such is not required. Pursuing additional state process in this case was not required and would have been futile. The ATC's decision to deny IFWS's application was unequivocal; it was a legal decision based on undisputed facts as applied to the plain meaning of the challenged statute. "Any suggestion that the commissioners might change

12

their minds after hearing more facts is illogical; . . . [t]he fate of the application was sealed by the residency statute at issue." (Filing No. 40 at 2.)

IFWS further replies that the availability of state judicial review is not a "remedy at law" for an action seeking declaratory and injunctive relief under 42 U.S.C. § 1983. A need to exhaust state remedies before pursuing relief in federal court is not applicable here; the Supreme Court has held that exhaustion is not required for actions under Section 1983. A party aggrieved by an unconstitutional state law or action may bring claims under Section 1983 "without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available." *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2172–73 (U.S. 2019).

IFWS asserts that the ATC's reliance on *Scales* and *Wisconsin Central Limited* for the proposition that judicial review itself is an adequate remedy at law does not apply in the context of this case. *Scales* involved a medical care provider seeking increased reimbursement from the state Medicaid program, and an adequate remedy at law existed in the form of monetary damages from the state agency that administered the Medicaid program. 593 N.E.2d 1283. *Wisconsin Central Limited* considered whether a state-court procedure for compensating a government taking of private property was an adequate remedy at law. There, the court noted that the federal Takings Clause was unusual among federal rights in that it permitted the taking of private property but required the state to pay just compensation. Thus, injunctive relief in federal court was not appropriate when the Constitution itself established monetary damages as the appropriate remedy. 95 F.3d 1359, 1369.

With respect to the ATC's reliance of a footnote in *D.C. Court of Appeals v. Feldman,* IFWS notes that while the footnote mentions the "desirability of giving the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments," 460 U.S.

at 482 n.16, that "legions of federal courts have enjoined or otherwise invalidated plainly unconstitutional state laws without awaiting state adjudications, and in cases far more comparable than *Feldman*." (Filing No. 40 at 5.) IFWS distinguishes *Feldman* from this case:

> In *Feldman*, the plaintiffs sought and obtained rulings from the District of Columbia Court of Appeals, and then rather than seeking review on *certiorari* in the Supreme Court filed their challenge to the bar admission rules through an action in the federal District Court, effectively seeking a form of appellate review of a state court ruling by a federal trial court. *Id.* at 468, 472. As the context of the case makes clear, when a party has litigated a claim in state court to judgment, a federal district court has no jurisdiction to second-guess the state court's judgment. Federal review in that circumstance is achieved through the Supreme Court's *certiorari* jurisdiction, and the plaintiff must raise relevant constitutional arguments in state court to preserve them for Supreme Court review. The dictum in *Feldman* about the desirability of state court review simply does not apply when the plaintiff has never invoked state court jurisdiction. (Filing No. 40 at 5–6.)

The Court is not persuaded by the ATC's assertion that state administrative and judicial procedures should have been pursued before IFWS brought its constitutional challenge in this Court.

> The general rule is that plaintiffs may bring constitutional claims under §1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available. . . . *Williamson County* effectively established an exhaustion requirement for §1983 takings claims when it held that a property owner must pursue state procedures for obtaining compensation before bringing a federal suit. But the Court did not phrase its holding in those terms; if it had, its error would have been clear.

*Knick*, 139 S. Ct. at 2172–73 (internal citations and quotation marks omitted).

A review of the plain language of the challenged statute, the undisputed facts in this case, and the arguments of the parties leads to the conclusion that a preliminary injunction in favor of IFWS is appropriate. IFWS's claims are ripe; it expended resources to pursue real estate and an alcohol permit and then applied to the ATC for the necessary permit. The ATC unequivocally denied the permit application on the sole basis that IFWS did not meet the in-state residency requirement of Indiana Code § 7.1-3-21-5.4(b). IFWS then brought its claims for injunctive and declaratory relief, challenging this statute.

IFWS is highly likely to succeed on the merits of its claims. As described above, the Supreme Court's recent decisions in *Granholm* and *Tennessee Wine* make it clear that the Twenty-First Amendment does not affect the basic non-discrimination principle of the dormant Commerce Clause, and residency requirements for alcoholic beverage licenses are subject to that principle. Where a statute on its face discriminates against out-of-state interests in violation of the dormant Commerce Clause, the statute can only be saved by the Twenty-First Amendment if there is a "legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Granholm*, 544 U.S. at 489; *see also Tennessee Wine*, 139 S. Ct. at 2474–75. On its face, Indiana Code § 7.1-3-21-5.4(b) discriminates against out-of-state limited liability companies. The ATC's only proffered reasons to support the statute—curtailing alcohol abuse, preventing underage drinking, and collecting tax revenues—already have been determined to be constitutionally inadequate. *See Tennessee Wine*, 139 S. Ct. at 2474–76. Thus, the Court determines that IFWS is highly likely to succeed on the merits and it has no adequate remedy at law.

**B.     Irreparable Harm**

Having determined that IFWS has shown likelihood of success on the merits and that it has no adequate remedy at law, the district court "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Grace Schools v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015).

IFWS argues that, absent injunctive relief, it will suffer irreparable harm because the continuing violation of its constitutional rights is an irreparable harm as a matter of law. "The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest," *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978), and this principle of law applies to violations of the Commerce Clause. *See Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 878 (N.D. Ill. 2000). IFWS argues that as a matter of law irreparable harm is established, but it can also be established as a matter of fact. IFWS invested significant resources of time and money to find suitable real estate for its package liquor store. There currently are no other suitable locations, and if IFWS cannot obtain the permit from the ATC, then it will risk losing the Lease and Purchase Agreement and the opportunity to establish its store in Indiana. Furthermore, IFWS cannot recover the costs that it has incurred thus far for the site. Because this lawsuit is against state officials in their official capacities, and because of sovereign immunity of the Defendants against compensatory damages, IFWS has no adequate remedy at law.

In response, the ATC asserts that IFWS has not demonstrated an irreparable harm because "IFWS may not suffer from irreparable harm if it were merely to continue with the application review process established by Indiana law." (Filing No. 39 at 7.) The ATC argues that any delay

in the application process is created by this federal action, and that harm could be alleviated if IFWS allowed the state administrative and judicial process to run its course.

The Court determines that IFWS suffers an irreparable harm because "[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest," *Preston*, 589 F.2d at 303 n.3; *see also Kendall-Jackson Winery*, 82 F. Supp. 2d at 878. IFWS also has no adequate remedy at law because it cannot pursue compensatory damages against the state actor Defendants because of sovereign immunity. The Court is not persuaded by the ATC's argument that pursuing in state court the same relief sought here provides an adequate remedy at law. The cases of *Scales* and *Wisconsin Central Limited*, relied upon by the ATC, involved issues where monetary damages were clearly delineated as the appropriate remedy, so adequate remedies at law existed to thwart injunctive relief. Such is not the case here. Accordingly, IFWS has made the necessary showing that it will suffer some measure of irreparable harm in the absence of injunctive relief.

The Court is persuaded by IFWS's argument that the ATC's response does nothing to rebut the assertion that Eleventh Amendment sovereign immunity bars monetary damages in federal court, which establishes the absence of an adequate remedy at law. And the ATC never claimed that damages would even be available to IFWS in state court. When state defendants have immunity from compensatory damages in federal court, the preliminary injunction movant has no adequate remedy at law. IFWS further replies that the ATC's same argument of available state procedures does not undermine the irreparable harm element for an injunction.

C. **Balance of Harms, Public Policy Considerations, and Sliding Scale Analysis**

"The district court must also consider the public interest in granting or denying an injunction." *Stuller*, 695 F.3d at 678. The Court "weighs the balance of potential harms on a

17

'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell,* 796 F.3d at 662.

IFWS asserts that the balance of harms and public interest favor IFWS because there is no harm to the Defendants in not being permitted to enforce an unconstitutional statute, and IFWS and the public are served by not having their constitutional rights infringed. IFWS concludes that the public interest also is served by allowing IFWS "to open an efficient and well-managed store in a former Marsh grocery space that has lain dormant in a prominent retail location. Indiana consumers will benefit from Total Wine's service, selection, and prices, while other retail tenants will benefit from a shopping center revitalized by a Total Wine store." (Filing No. 14 at 21.)

In contrast, the ATC asserts that, because it is a political branch of government, public policy and the balance of equities favors the State and upholding the statute. When a party establishes that a state law is depriving it of its constitutional rights, the balance of harms favors injunctive relief. There is no "harm to a [government agency] when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004); *see also Does v. City of Indianapolis*, 2006 U.S. Dist. LEXIS 72865, at *29 (S.D. Ind. Oct. 5, 2006) ("Defendants will not be harmed by having to conform to constitutional standards and, without an injunction, Plaintiffs will continue to be denied their constitutional rights. The balance of harms therefore favors the issuance of an injunction."). The ATC has not presented (and the Court cannot think of) any harm that it will suffer by the issuance of a preliminary injunction in this case. On the other hand, if an injunction is not issued, IFWS will continue to suffer from the ATC's violation of the dormant Commerce Clause. And "[s]urely, upholding constitutional rights serves the public interest." *Joelner*, 378 F.3d at 620. With the foregoing analysis in mind, the Court must weigh

the balance of potential harms on a sliding scale against the movant's likelihood of success. Having weighed all the factors, IFWS has demonstrated that it is entitled to the injunction it seeks. No bond will be required because monetary damages are not at issue in this case.

### IV. CONCLUSION

Because each of the factors for the issuance of a preliminary injunction weighs in favor of Plaintiff Indiana Fine Wine & Spirits, LLC, the Court **GRANTS** IFWS's Motion for Preliminary Injunction ([Filing No. 13](#)). Pursuant to Federal Rule of Civil Procedure 65(d), the Court **ISSUES A PRELIMINARY INJUNCTION** prohibiting the Defendants, their agents, servants, and employees, and persons acting in concert or participation with them, from enforcing the residency requirements of Indiana Code § 7.1-3-21-5.4(b). IFWS need not post a bond.

**SO ORDERED.**

Date: 5/11/2020

*[Signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bryan Harold Babb
BOSE MCKINNEY & EVANS, LLP
bbabb@boselaw.com

John J. Connolly
ZUCKERMAN SPAEDER LLP
jconnolly@zuckerman.com

Bradley M. Dick
BOSE MCKINNEY & EVANS, LLP
bdick@boselaw.com

Alex C. Intermill
BOSE MCKINNEY & EVANS, LLP
aintermill@boselaw.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
wmurphy@zuckerman.com

Courtney Lyn Abshire
INDIANA ATTORNEY GENERAL
courtney.abshire@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Lauren Ashley Jacobsen
INDIANA ATTORNEY GENERAL
lauren.jacobsen@atg.in.gov

Sarah Ann Hurdle Shields
INDIANA ATTORNEY GENERAL
sarah.shields@atg.in.gov